MAUDE L. PORTER, ALEXANDER L. PORTER AND EDWIN R. BARTLETT, EXECUTORS UNDER THE LAST WILL AND TESTAMENT OF ALEXANDER J. PORTER, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 79322. Promulgated July 14, 1936.

*Ansley Wilcox, 2nd, Esq.*, for the petitioners.
*Eugene G. Wilcox, Esq.*, for the respondent.

## OPINION.

VAN FOSSAN: This proceeding involves estate taxes in the sum of $10,373.71. Three issues are presented, viz:

(1) Whether a claim of the decedent against Porter-Bartlett, Inc., in the face amount of $5,000, had a fair market value equal to $5,000;

(2) Whether petitioners are entitled to deduct $75,000 from the gross estate, being an amount paid by them as executors on account of

a guarantee given by decedent for the obligations of W. Keith Schneidau;

(3) Whether petitioners are entitled to deduct $1,300 from the gross estate on account of the payment of pledges of the decedent to charitable, religious, scientific, or educational institutions.

The parties submitted the proceeding upon a written stipulation of facts, together with exhibits attached thereto. For the purpose of determining the issues presented, we set forth only such portions thereof as are deemed pertinent.

The decedent, Alexander J. Porter, was, prior to his decease on November 29, 1932, a resident of Niagara Falls, New York. By his last will and testament he named the parties petitioners as the executors of his estate, and said parties were duly appointed, and are now acting as the executors of decedent's estate.

On or about November 3, 1932, Porter-Bartlett, Inc., a corporation engaged in the real estate and insurance business in Niagara Falls, New York, issued a note to the Power City Trust Co. in the sum of $5,000, which note was endorsed by decedent and was payable on December 5, 1932. The corporation could not have secured the loan covered by said note without the endorsement of the decedent, who was president of the corporation. Porter-Bartlett, Inc., was operated by decedent's son and other relatives. At maturity of the note on December 5, 1932, it was not paid by the corporation and claim was made by the bank against the executors of the estate. The executors were required to, and did, pay to the Power City Trust Co. $5,000 in satisfaction of decedent's endorsement. Payment was made by the executors on or about March 31, 1933.

The executors petitioned the Surrogate's Court for a review and approval of this $5,000 payment, and upon a satisfactory showing to the court, a decree approving said payment was granted on October 19, 1934.

A statement of the assets and liabilities of Porter-Bartlett, Inc., at November 30, 1932, shows that this corporation had total assets of $10,390.33, liabilities totaling $14,674.14, and a profit and loss deficit of $4,283.81. The corporation operated at a loss during each of the fiscal years 1930, 1931, and 1932.

The executors of decedent's estate have not received or realized directly or indirectly any payment with respect to the satisfaction of said payment on account of said endorsement.

In the estate tax return the petitioners listed their claim against Porter-Bartlett, Inc., as a claim of no value, but they deducted their $5,000 payment to Power City Trust Co. on account of the Porter-Bartlett, Inc., note, as a debt of decedent existing at the time of his death.

The respondent allowed the deduction but increased decedent's gross estate by $5,000 as the value of the estate's claim against Porter-Bartlett, Inc., the maker of the note, which respondent held was a solvent corporation.

On June 28, 1926, W. Keith Schneidau was indebted to the Bank of Niagara, a predecessor bank of Power City Trust Co., on account of loans in the amount of $20,250. Schneidau had pledged as security 500 shares of the capital stock of Shredded Wheat Co., the collateral value of which was approximately $24,500. On that date Schneidau borrowed an additional $950 from said bank, which sum was payable on July 28, 1926. As a condition to the additional loan by the Bank of Niagara, the decedent was required to guarantee the payment of the $950. Between June 28, 1926, and November 27, 1926, Schneidau reduced his indebtedness from $21,200 to $850, but no release of the guarantee of decedent was given by the bank.

Between the date of decedent's $950 guarantee and October 31, 1929, various additional loans were secured by Schneidau from the bank and various payments were made by him on his indebtedness. On the latter date Schneidau was indebted to the bank, another predecessor of Power City Trust Co., in an amount of $56,975.37. On October 31, 1929, the officers of the bank estimated that Schneidau's collateral had a fair market value aggregating $70,400, and on that date decedent executed an additional guarantee to the bank with respect to Schneidau's loans in the amount of $15,000.

On July 10, 1930, upon demand of the bank, the decedent increased his guarantee on the note of Schneidau by executing to the bank an additional guarantee of $15,000, thereby raising decedent's total guarantee to $30,950. At that time Schneidau's loan amounted to $124,400, against which he had pledged as collateral certain specified securities, not here material, having an aggregate market value of $139,807.

On July 16, 1930, decedent replaced his three guarantees with one guarantee for $30,000. On October 11, 1930, decedent increased the amount of his guarantee to $45,000. On September 30, 1931, decedent executed an additional guarantee of $30,000, and on October 3, 1931, a new guarantee of $75,000 was executed by decedent to the bank and the old guarantees were surrendered.

On October 1, 1931, the loan ledger of Power City Trust Co. showed the indebtedness of Schneidau to be $120,391.58. Against said loan Schneidau had collateral pledged that was valued at $70,792. At the date of decedent's death Schneidau's loan with Power City Trust Co. was $123,970.96, against which the Trust Co. held the same collateral as it had on October 1, 1931, together with decedent's $75,000 guarantee.

The written guarantee was, in part, in the following form:

Niagara Falls, N. Y., October 1, 1931

To POWER CITY TRUST COMPANY,
  Niagara Falls, N. Y.

The undersigned request(s) that you forbear from demanding payment this day of the sum(s) for which W. Keith Schneidau (hereinafter called "the Obligor") is obligated to you upon his demand note dated June 30, 1930, for $123,970.96 and in consideration of such forbearance, and of other valuable considerations, receipt of which is hereby acknowledged by the undersigned, the undersigned hereby guarantee(s) and agree(s) to be responsible for the payment of such sums and any and all other indebtedness and/or liability of the Obligor of every name or nature whatever now due or owing or which may hereafter become due or owing to you, in whatever form such indebtedness and/or liability may be, and whether heretofore or hereafter contracted or incurred, together with any and all interest due, accrued or which may heeafter accrue thereon, and any and all costs, charges, fees and expenses which you may incur or which you may be or become entitled to recover from the Obligor in connection therewith, provided, however, that the extent of the liability of the undersigned hereunder shall not at any one time exceed $75,000.

\*       \*       \*       \*       \*       \*       \*       \*

[Signed]   ALEXANDER J. PORTER

Subsequent to decedent's death Power City Trust Co. demanded payment of the indebtedness of Schneidau. Upon failure to make any payment, the Trust Co. sold the collateral, applied the proceeds against his indebtedness, and after determining that the proceeds left an unpaid balance in excess of decedent's guarantee, the Trust Co. demanded payment in the amount of $75,000. Thereafter, and on or about March 31, 1933, the petitioners paid Power City Trust Co. $75,000 in satisfaction of decedent's guarantee.

The executors petitioned the Surrogate's Court for review and approval of said $75,000 payment, and upon a satisfactory showing to the court a decree dated October 19, 1934, was granted approving said payment.

The petitioners have not received or realized, directly or indirectly, any payment with respect to the satisfaction of the said guarantee. At no time since decedent's death has Schneidau been in possession of property or assets against which the executors could secure satisfaction for all or any part of the $75,000 payment.

On the estate tax return the executors deducted the $75,000 as a debt of decedent existing at the time of his death. The respondent disallowed the deduction upon the ground that the "obligation was not incurred for a full and adequate consideration in money or money's worth."

Prior to his death decedent had made pledges to certain charitable, religious, educational, and scientific organizations, on which pledges the following amounts were unpaid at November 29, 1932:

| | |
|---|---|
| Mt. St. Mary's Hospital | $500 |
| Niagara Falls Community Chest | 500 |
| Young Men's Christian Association | 100 |
| Old Fort Niagara Association | 200 |

Each of the decedent's subscriptions contained the words "in consideration of the gifts of others", or similar phrases. After his death the executors paid the above amounts due on decedent's pledges. These payments were reviewed by the Surrogate's Court and approved by its decree of October 19, 1934.

On the estate tax return the executors claimed the amounts paid in satisfaction of decedent's pledges as deductions for debts of decedent existing at the time of his death. The respondent disallowed the deductions upon the ground that "the same are not allowable deductions, the obligations not having been incurred for an adequate and full consideration in money or money's worth."

The consideration for the endorsement of the note of $5,000 and guarantee of $75,000, and the pledges made by the decedent aggregating $1,300 did not augment the estate of the decedent, nor did it grant him any right or privilege he did not have before, except the right of subrogation which at the date of decedent's death and at all times since has had no value, and it did not operate to discharge him from an existing claim, as for a breach of contract or personal injury.

The first issue is whether the claim which petitioners had against Porter-Bartlett, Inc., should be included in the gross estate at its face value of $5,000 as determined by the respondent. The determination of the respondent is *prima facie* correct and, therefore, petitioners carry the burden of proving that his determination is erroneous. *Botany Worsted Mills* v. *United States*, 278 U. S. 282. In our opinion the petitioners have failed to establish that their claim is worthless. The evidence consists of the stipulated fact that the loan could not have been secured without decedent's endorsement of the note, the failure of Porter-Bartlett to pay at maturity, and the balance sheets of Porter-Bartlett, Inc., showing liabilities in excess of assets and an operating deficit. While this evidence establishes the financial instability of the corporation and indicates that it may have been insolvent, standing alone and without more, it is insufficient to establish the complete lack of value of the entire claim. It would appear that the claim had some value, but in what amount the evidence will not permit us to say. This situation leaves us no alternative but to approve respondent's determination.

The second issue is whether petitioners are entitled to deduct $75,000 paid to Power City Trust Co. under the guarantee given by decedent during his lifetime. The respondent contends that the deduction is not allowable because the obligation was not incurred or contracted by decedent for an adequate and full consideration in money or money's worth within the meaning of section 303 (a) (1) of the Revenue Act of 1926;[1] that while the statute does not expressly provide that the adequate and full consideration in money or money's worth shall have been received by decedent personally, yet this is the obvious purpose and intent of the provisions, *Latty* v. *Commissioner*, 62 Fed. (2d) 952, (C. C. A., 6th Cir.); and that in substance decedent agreed to make a gift to Schneidau not in excess of $75,000.

Petitioners rely on *United States* v. *Mitchell*, 74 Fed. (2d) 571, (C. C. A., 7th Cir.) in which the basic facts were very similar to the present case. There the decedent, to induce a trust company to lend money to corporations in which deceased's kin were interested, agreed orally to indemnify the trust company against loss on the loans. In that case as here, the Government contended that the "adequate and full consideration in money or money's worth" must have passed to the decedent before a claim may be deducted and relied on the *Latty* case. After quoting at some length from the opinion in the *Latty* case, the court rejected the Government's contention and held that the claim based on the indemnity agreement was based on "an adequate consideration in money or money's worth" so as to be deductible for estate tax purposes, though consideration did not pass to the decedent. Directing itself to this matter the court observed:

We are unable to accept the Government's contention. While deductions are a matter of statutory allowance and are not determined on the basis of equity, yet it is legitimate to assume that Congress intended to provide for a tax on net estates and that, in determining net estates, deductions for debts might be made. It was to avoid the successful presentation of swollen or fictitious claims that the amendments were adopted. Fictitious claims and deductions crept in under the words "claims against the estate". Impositions were still possible under the language of the 1924 act; hence the amendment in 1926. However, in none of the amendments was it specifically required that the said full and adequate consideration should pass to the decedent.

---

[1] Sec. 303. For the purpose of the tax the value of the net estate shall be determined—

(a) In the case of a resident, by deducting from the value of the gross estate—

(1) Such amounts for funeral expenses, administration expenses, claims against the estate, unpaid mortgages upon, or any indebtedness in respect to, property (except, in the case of a resident decedent, where such property is not situated in the United States), to the extent that such claims, mortgages, or indebtedness were incurred or contracted bona fide and for an adequate and full consideration in money or money's worth * * *.

Moreover, the facts in the *Latty* case are so dissimilar as to make that decision inapplicable here. In that case (23 B. T. A. 1250) the claim arose out of the failure of the decedent to create a trust for the benefit of his daughter, in consideration of her promise to accept such provision in full satisfaction of all her rights against decedent or his estate. She also agreed not to contest decedent's will. The Board held that the consideration was in essence a promise to refrain from claiming more, and was not in money's worth within the requirements of section 303 (a) (1) of the Revenue Act of 1924. The Board's decision was affirmed by the Circuit Court of Appeals for the Sixth Circuit. In *Jeptha H. Wade, Jr., et al.*, 21 B. T. A. 339, we had under consideration the same statute and we there held:

From a careful consideration of the provisions of section 303 (a) (1) of the Revenue Act of 1926, and of the legislative history of the section, we are of the opinion that it is not necessary that the consideration for the claim against the estate or mortgage upon or indebtedness in respect of property referred to in the section should have been received by the decedent. The law does not require that the consideration should be received by the decedent. The statute requires (1) that the indebtedness should be incurred or contracted bona fide; (2) that there shall be an adequate and full consideration; and (3) that the consideration shall be in money or money's worth.

We believe that the petitioners' case meets each of these tests fully. The guarantee was given to secure an extension of credit to Schneidau and recites the forbearance to demand payment and other valuable considerations. The credit was extended in reliance on the guarantee. The obligation to protect the bank was valid, legal, and enforceable. It resulted in a liability which was paid by the estate and formed the basis of the deduction claimed. There is no question as to the bona fides of the transaction.

Under the facts here present and in reliance on these authorities, we reverse the respondent's action.

The final issue is whether the unpaid portions of certain pledges constitute allowable deductions from decedent's gross estate. It is controlled by prior decisions of this Board. *Jeptha H. Wade, Jr., et al., supra; Robert A. Taft, Executor*, 33 B. T. A. 671; and *Margaret Day et al., Executors*, 34 B. T. A. 11, wherein we held that the monetary pledges of others constituted an adequate and full consideration within the meaning of section 303. It is stipulated that the unpaid pledges herein were "in consideration of the gifts of others", or in phrases of similar purport, and, therefore, the rule announced in the above cited cases is applicable.

*Decision will be entered under Rule 50.*